UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SERGIO MIRAMONTES-MALDONADO,<br><br>Defendant. | Case No. 1:19-cr-00060-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

# INTRODUCTION

Before the Court is Defendant Sergio Miramontes-Maldonado's Motion to Dismiss the Indictment (Dkt. 30). For the reasons explained below, the Court will deny the motion.

# BACKGROUND

Miramontes is charged with a single count of illegal reentry in violation of 8 U.S.C. § 1326. Dkt. 1. The indictment alleges that Miramontes was removed from the United States in 2000. *Id.* The removal proceeding in 2000 was a reinstatement

of a 1997 exclusion and removal proceeding. *See Def.'s Ex. D*, Dkt. 30-4. Miramontes challenges the validity of the 1997 exclusion proceeding.[1]

The 1997 exclusion proceedings began on January 7, 1997 when Mr. Miramontes applied for entry to the United States from Mexico at the San Ysidro Port of Entry. *Mot.* at 5, Dkt. 30; *see Miramontes Decl.* ¶ 13, Dkt. 30-3. The next day, immigration authorities served Miramontes with a Notice to Applicant for Admission Detained for Hearing Before Immigration Judge (Form I-122) and a Form I-110 that indicated Miramontes had applied for admission as "an alien presenting a counterfeit I-94 form bearing a counterfeit adit stamp." *Mot.* at 5, Dkt. 30; *Def.'s Ex. D*, Dkt. 30-4 at 8-9. He was detained for further inquiry, placed under exclusion proceedings, and taken into INS custody pending an exclusion hearing. *Def.'s Ex. D*, Dkt. 30-4 at 10.

At the exclusion hearing he indicated that he was willing to accept an exclusion and deportation order and was then ordered excluded from the United States under § 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (INA) (codified as 8 U.S.C. § 1182(a)(7)(A)(i)(I) (1994 Sup. II)). *Def.'s Ex. D*, Dkt. 30-4

---

[1] The reinstatement of an otherwise invalid removal order cannot serve as an independent ground for an illegal reentry charge. Thus, if the 1997 exclusion and removal order is invalid so is the 2000 reinstatement. *See United States v. Arias-Ordonez*, 597 F.3d 972, 978 (9th Cir. 2010)).

at 6-7. The hearing was recorded but the recording is incomprehensible. *See Def.'s Ex. A*, Dkt. 30-1 at 2.; *Def.'s Ex. B*, Dkt. 30-2 at 2. On January 13, 1997, Miramontes was presented with a Notice to Alien Ordered Excluded by Immigration Judge (Form I-296), which stated that "[a]n immigration judge has ordered that you be excluded from admission into the United States, and that you be deported from the United States." *Def.'s Ex. D*, Dkt. 30-4 at 3. Miramontes was thereby excluded and deported. In his current motion, Miramontes argues the IJ violated his due process rights by failing to properly maintain a contemporaneous recording of the exclusion hearing, failing to inform him of the immigration charges against him in a language he understood, and by failing to advise him of his eligibility for withdrawal of application.

## LEGAL STANDARD

Under 8 U.S.C. § 1326, a defendant charged with illegal re-entry after removal may collaterally attack the removal order. 8 U.S.C. § 1326 (2019); *United States v. Mendoza–Lopez,* 481 U.S. 828, 837–38 (1987). To sustain a collateral attack, a defendant must demonstrate that (1) he "exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived [him] of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d) (2019). An underlying removal order is

fundamentally unfair if: (1) defects in the underlying deportation proceeding violated a defendant's due process rights and (2) the defendant was prejudiced because of such defects. *United States v. Ubaldo–Figueroa*, 364 F.3d 1042, 1048 (9th Cir. 2004). If a defendant successfully demonstrates prejudice, the burden shifts and the government may attempt to show that that the procedural violation could not have changed the outcome. *United States v. Gonzalez–Valerio*, 364 F.3d 1051, 1054 (9th Cir. 2003).

## ANALYSIS

### 1. The IJ's Subject-Matter Jurisdiction

As a threshold matter, Miramontes argues that the IJ lacked jurisdiction over his removal proceedings because the "Notice to Appear" did not contain a specific date and time for the hearing. As this Court recently made clear in *United States v. Gonzalez-Sanchez*, 398 F. Supp. 3d 794 (D. Idaho 2019),[2] the Ninth Circuit's recent decision in *Karingithi v. Whitaker*, 913 F.3d 1158 (9th Cir. 2019) forecloses this argument. In *Karingithi*, the Ninth Circuit held that an IJ had jurisdiction over

---

[2] The Court notes that Miramontes' Defense Counsel briefed the jurisdictional argument in *Gonzalez-Sanchez* and therefore should be aware of this Court's holding. *See* Fed. R. Civ. P. 11(b).

**MEMORANDUM DECISION AND ORDER - 4**

removal proceedings even though the Notice to Appear lacked a date and time for the removal hearing.

Miramontes raises several arguments as to why *Karingithi* was wrongly decided. But "once a federal circuit court issues a decision, the district courts within that circuit are bound to follow it and have no authority to await a ruling by the Supreme Court before applying the circuit court's decision as binding authority." *Yong v. I.N.S.*, 208 F.3d 1116, 1119 n.2 (9th Cir. 2000). Under controlling Ninth Circuit precedent, the IJ had subject-matter jurisdiction over the 1997 removal proceeding.

2.  **Miramontes's Collateral Attack**

    A.  *Administrative Exhaustion and Deprivation of Judicial Review*

To sustain a collateral attack, a defendant must first demonstrate that he exhausted any available administrative remedies and that the deportation proceedings improperly deprived him of the opportunity for judicial review. 8 U.S.C. § 1326(d) (2019). Miramontes argues generally that he is excused from both requirements.

Miramontes was ordered detained and eventually excluded under § 235(b) of the INA, 8 U.S.C. § 1225(b) (1994 Sup. II). *See Def.'s Ex. D*, Dkt. 30-4, at 8-9. Section 235(b) precludes any administrative remedies or meaningful judicial review of a removal order; thus, Miramontes has met the first two prongs of

§1326(d). *See United States v. Barajas-Alvarado*, 655 F.3d 1077, 1082 (9th Cir. 2011). However, a criminal defendant who challenges an underlying removal order as "fundamentally unfair" is entitled to some judicial review of that order. *Id.* at 1084. Thus, this Court must determine if the 1997 removal order was fundamentally unfair. *Id.* at 1087.

### B. *Fundamental Unfairness*

To establish that the removal order was fundamentally unfair, Miramontes must establish that the proceedings, as conducted, failed to comply with the requirements of due process, and that he was prejudiced as a result of those failures. *See* 8 U.S.C. § 1326(d)(3) (2019); *United States v. Raya-Vaca*, 771 F.3d 1195, 1202 (9th Cir. 2014). In exclusion proceedings non-admitted aliens are entitled only to the processes that Congress provides. *Barajas-Alvarado*, 655 F.3d at 1088; *see U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950) ("Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned."). Miramontes contends that he suffered three distinct due process violations during his 1997 removal proceedings: (1) the government's failure to preserve an adequate record of his hearing; (2) the officer's failure to inform Miramontes of the charges of inadmissibility he faced; and (3) the officer's failure to advise Miramontes of the possibility of withdrawing his application for admission.

**(1)   Due Process**

(a)   *The Absence of a Contemporaneous Recording*

First, Miramontes argues that the absence of a discernable contemporaneous recording is, on its own, a violation of his due process rights because it deprives him of meaningful review of the exclusion proceeding. Miramontes' argument is foreclosed by *United States v. Medina*, 236 F.3d 1028 (9th Cir. 2001). In *Medina*, the Ninth Circuit held that the defendant had not been deprived of his due process rights by the absence of a tape recording of his prior deportation proceeding. *Id.* at 1032. While "the absence of a tape recording or transcript surely *affects* judicial review of a deportation hearing … it does not, however, 'effectively eliminate the right of the alien to obtain judicial review.'" *Id.* (quoting *Mendoza-Lopez*, 481 U.S. at 839) (emphasis in original).

Miramontes cites *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011), to argue that a contemporaneous recording is required. However, in *Singh*, the Ninth Circuit was considering whether a contemporaneous record must be maintained in a *Casas* bond hearing for a permanent resident who was found to be deportable. *Id.* at 1201-02. Miramontes' situation is different than that of the deportee in *Singh*. Permanent residents are entitled to more due process than aliens excluded at the border. *See Shaughnessy*, 338 U.S. at 543. Accordingly, the Court finds that the

Government's failure to maintain a contemporaneous recording of Miramontes' exclusion hearing alone did not violate his due process rights.

        (b)    *The Absence of Charges of Inadmissibility in Spanish*

Second, Miramontes argues that he was not given notice of the immigration charges against him because the charging document was only written in English and was never translated to Spanish. The United States argues that the record is silent as to whether or not he was given notice of the immigration charges against him, and therefore that Miramontes did not meet his burden of proof on this claim.

The Ninth Circuit has held that due process requires an applicant in immigration proceedings "be given competent translation services." [3] *Barajas-*

---

[3] *Barajas-Alvarado* is the only Ninth Circuit case the Court has found discussing the right of a non-admitted alien in exclusion proceedings to have the charges explained to him. In *Barajas-Alvarado* the Ninth Circuit focused on the prejudice prong, but seemed to assume that, where the regulations require "interpretive assistance" in an exclusion proceeding, the alien had a due process right to have the charges and proceedings translated. The Ninth Circuit relied on its previous cases discussing the right in the deportation context, where the alien was being deported from within the United States. The Court notes that the statute governing exclusion did not provide a right for either an exclusion hearing or any translation of the charges. 8 U.S.C. § 1225(b) (1994 Sup. II). The Department of Justice created the exclusion proceedings by regulation and required that the alien be provided with interpretive assistance. 8 C.F.R. § 235.6(a) (1997). Despite the holding of *Shaughnessy* and its progeny—that a non-admitted alien in exclusion proceedings is only entitled to the limited rights provided by Congress—this Court thinks that it is only fair that where the Government has provided a hearing, the non-admitted alien has a right to understand the charges against him and the proceedings he is subjected to. *Cf. Raya-Vaca*, 771 F.3d at 1204.

*Alvarado*, 655 F.3d at 1088 (quoting *He v. Ashcroft*, 328 F.3d 593, 598 (9th Cir. 2003)).

Here, the record is ambiguous as to whether Miramontes was given notice of the charges against him. Miramontes received and signed the I-122 form, which contained the allegations against him. *Def.'s Ex. D,* Dkt. 30-4, at 9. There is no evidence that Miramontes received the I-122 form translated to Spanish and the record is silent as to whether he had the form read or explained to him. The I-110 form, provided to the immigration judge, indicated that a Spanish interpreter was needed. *Id.* at 8. The Uncontested Exclusion Hearing Questionnaire shows that an immigration officer explained the questions on the form to Miramontes. *Id.* at 7. It also shows that Miramontes spoke both Spanish and English. *Id.* Even if the Court were to assume that the evidence in the record establishes that Miramontes suffered a due process violation because the I-122 form was not translated, Miramontes must show that the defect resulted in prejudice. *Barajas-Alvarado*, 655 F.3d at 1088-89.

      (c)  *Withdrawal of Application for Admission*

Third, Miramontes claims that he was not properly advised of his right to withdraw his application for admission. The United States argues that in 1997 withdrawal of application for admission was merely a discretionary remedy.

At the time Miramontes was excluded from the United States, the Attorney general had discretion to permit an alien to withdraw his application for admission. 8 U.S.C. § 1225(a)(4) (1994 Supp. II). However, neither § 1225(a)(4), nor the regulations governing aliens applying for admission at the border, required the alien to be told about his ability to withdraw his application. *See United States v. Meraz-Olivera*, 472 F. App'x 610, 611 (9th Cir. 2012).

The Ninth Circuit has held that the failure of an immigration officer to inform a non-admitted alien of his ability to request withdrawal of his application for admission does not violate the alien's due process rights. *United States v. Sanchez-Aguilar*, 719 F.3d 1108, 1112 (9th Cir. 2013) ("The statute and regulation governing expedited removal proceedings,… set forth the procedural rights to which such aliens are entitled, but the right to be informed of potentially available avenues of relief from removal is not among them."). Because Miramontes was a non-admitted alien his due process rights were not violated by any failure of the IJ to inform of his ability to withdraw his application for admission.

### (2)   Prejudice

Last, Miramontes must show that he was prejudiced by the defects in the removal proceeding. Miramontes argues that if he had been more fully aware of the charges against him and of his ability to withdraw his application for admission, he could have presented a "powerful case for being permitted to

withdraw his application for admission." *Mot.* at 14, Dkt. 30. The only relief Miramontes argues he may have received was withdrawal of his application for admission. *See id.* at 14-16. Assuming arguendo, that had Miramontes been advised of the immigration charges against him in Spanish, he then would have applied to withdraw his application, the Court finds that he has still not shown prejudice.

To show prejudice, "[w]here the relevant form of relief is discretionary, the alien must 'make a plausible' showing that the facts presented would cause the Attorney General to exercise discretion in his favor." *Barajas-Alvarado*, 655 F.3d at 1089 (citing *United States v. Arce-Hernandez*, 163 F.3d 559 (9th Cir. 1998)). Establishing "plausibility" requires more than establishing a mere "possibility." *Id.* To show "plausible grounds" for relief, an alien must show that, in light of the factors relevant to the form of relief being sought, and based on the "unique circumstances of [the alien's] own case," it was plausible (not merely conceivable) that the IJ would have exercised his or her discretion in the alien's favor. *Barajas-Alvarado*, 655 F.3d at 1089 (citing *United States v. Corrales-Beltran*, 192 F.3d 1311, 1318 (9th Cir. 1999)).

Miramontes argues that it is plausible he would have been allowed to withdraw his application because he had the intent and means to depart the United States immediately, no criminal record, U.S. citizen children, only one prior

immigration contact, and a long history of pro-social employment in the United States. *Mot.* at 15, Dkt. 30. However, Miramontes avoids addressing the fact that he applied for admission with a fraudulent document and admitted to paying $850 for that document. *Def.'s Ex. D.*, Dkt. 30-4 at 10. Instead he argues that fraud is not dispositive of whether an alien will be allowed to withdraw his application for admission. *Rep.* at 10, Dkt. 38.

At the time Miramontes was excluded, the BIA's precedential opinion, *In re Gutierrez*, 19 I. & N. Dec. 562 (BIA 1988), provided guidance to IJs in exercising this discretion. *See Barajas-Alvarado*, 655 F.3d at 1089; *United States v. Cisneros-Resendiz*, 656 F.3d 1015, 1019 (9th Cir. 2011). In *Gutierrez*, the IJ determined that the alien was excludable, but permitted him to withdraw his application for admission, citing as "positive considerations" the facts that the applicant was married to a lawful permanent resident who would become eligible for citizenship in one year, had a United States citizen child and was expecting a second, had no arrest or welfare record, and had been gainfully employed and was supporting his family. *Gutierrez*, 19 I. & N. at 563–64.

The Service appealed and the BIA reversed, stating that "[a]n immigration judge should not allow withdrawal unless an alien, in addition to demonstrating that he possesses both the intent and the means to depart immediately from the United States, establishes that factors directly relating to the issue of his

**MEMORANDUM DECISION AND ORDER - 12**

admissibility indicate that granting withdrawal would be in the interest of justice (i.e., that justice would be ill served if an order of exclusion was entered)." *Id.* at 564–65. Further, the BIA ruled that once an IJ has determined that an alien is excludable, permission to withdraw "should ordinarily only be granted with the concurrence of the Service." *Id.* at 565. Applying these principles to the case before it, the BIA held that "even if we were to disregard the applicant's attempted fraudulent entry, we can discern no facts or circumstances relevant to the issue of his admissibility which suggest that justice demands that he be allowed to withdraw his application for admission." *Id*.

The Ninth Circuit has repeatedly cited *Gutierrez* for the proposition that an alien who intentionally obtained and presented fraudulent immigration documents is inadmissible and would not be allowed to withdraw his application for admission. *See Barajas-Alvarado*, 655 F.3d at 1089; *Cisneros-Resendiz*, 656 F.3d at 1021 (9th Cir. 2011); *see also* 8 U.S.C. § 1182(a)(6)(C)(i) (1994 Sup. II) ("Any alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this chapter is inadmissible.").

None of the factors cited by Miramontes—his U.S. citizen children, his long work history, or his lack of a criminal history—change the calculation. These are

all "equities" and not "factors directly relating to the issue of inadmissibility."[4] *Cisneros-Resendiz*, 656 F.3d at 1022 (9th Cir. 2011). Because Miramontes applied for entry into the United States with fraudulent papers, and had no favorable factors directly relating to his inadmissibility, it is simply not plausible that he would have been allowed to withdraw his application.

## ORDER

**IT IS ORDERED that** Defendant's Motion to Dismiss the Indictment (Dkt. 30) is **DENIED**.

DATED: January 16, 2020

B. Lynn Winmill
U.S. District Court Judge

---

[4] Miramontes cites several cases that he argues show family ties and a lack of criminal history may overcome fraud. However, the aliens in these cases had either not committed fraud, had a visa available to them, or the cases were decided by the BIA prior to *Gutierrez*. *See Mot.* at 15-16, Dkt. 30; *Rep.* at 10, Dkt. 38 (citing *U.S. v. Arizmendi-Depaz*, 2019 WL 3945459, at *9-10 (S.D. Cal. Aug. 21, 2019)).